UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- X

KINGVISION PAY-PER-VIEW, LTD.,

                    Plaintiff,

      -against-                             **REPORT AND RECOMMENDATION**

ESMERELDA DE COLOMBIA RESTAURANT, INC.,
d/b/a/ ESMERELDA DE COLOMBIA, and EMERIGO      03-CV-1443 (DGT) (KAM)
GONZALEZ,

                    Defendants.

-------------------------------------------------------------------------- X

**KIYO A. MATSUMOTO, United States Magistrate Judge:**

        By orders entered October 6, 2004 and March 28, 2005, United States District Judge David G. Trager referred this matter, pursuant to 28 U.S.C. § 636(b), to the undersigned magistrate judge for an inquest on damages after ordering, upon the default motion of plaintiff Kingvision Pay-Per-View, Ltd. ("Kingvision" or "plaintiff"), that judgment be entered against defendants Esmerelda de Colombia Restaurant, Inc., d/b/a Esmerelda de Colombia ("Esmerelda de Colombia" or the "establishment") and Emerigo Gonzalez ("Gonzalez") (collectively "defendants"), for violations of 47 U.S.C. §§ 605 and 553. Plaintiff's default motion seeks statutory damages of up to $10,000 against each defendant and an additional damages award of up to $100,000 against each defendant. Plaintiff also seeks attorneys' fees and costs in the sum of $2,508,[1] as well as interest. Defendants have not made any submissions in opposition, despite receiving notice and an opportunity to do so. For the reasons set forth below, it is respectfully

---

[1]Specifically, plaintiff seeks $1,895 in attorneys' fees and $613 in costs.

recommended that the District Court award plaintiff statutory damages of $2,000, as well as attorneys' fees and costs of $2,508, for a total award of $4,508, against both defendants, jointly and severally. Furthermore, it is respectfully recommended that this amount accrue interest at the rate of nine per cent from March 25, 2003 to the entry of judgment, and that the judgment itself accrue interest at the rate provided by law until paid.

## BACKGROUND

The complaint alleges that plaintiff entered into a closed-circuit television license agreement to distribute the broadcast of a boxing match between Hasim Rahman and Lennox Lewis ("Rahman/Lewis match" or the "Event") on November 17, 2001, via closed-circuit television and encrypted satellite signal to commercial establishments for an unspecified licensing fee. See Complaint ("Compl.") ¶¶ 7-13; docket no. 7, Affidavit of Jeanne Ellen Forster, Esq., in Support of Judgment by Default ("Forster Aff.") ¶ 3. Plaintiff entered into contracts with various entities within the State of New York which granted them the right to publicly exhibit the Event to their patrons. Compl. ¶ 8-9. Such establishments were contractually required to charge their patrons an admission fee for attending the exhibition of the Event. See Plaintiff's Memorandum of Law in Support of Request for Judgment by Default (Plaintiff's MOL") at 3. The Event was available to the defendants to purchase for broadcast, however defendants did not contract with plaintiff to obtain the rights to broadcast the Event, and thus, were not authorized to receive, transmit and publish the broadcast. Compl. ¶¶ 12, 18. Moreover, the Event was not intended to be broadcast to the general public. Compl. ¶ 9.

To identify and prosecute commercial establishments which illegally intercepted

its broadcast, plaintiff retained private investigator Peter Manceri who entered Esmerelda de Colombia on November 21, 2001 at approximately 10:45 p.m. See docket no. 8, Plaintiff's MOL at 4; Affidavit of Peter Manceri ("Manceri Aff.") ¶ 3, annexed to Plaintiff's MOL as "Ex. B." Despite the fact that defendants were not authorized to broadcast the Event, the investigator nevertheless saw the Event being displayed in Esmerelda de Colombia on one television and/or monitor and noted there were approximately fourteen "persons"[2] in the establishment at the time of his visit. Manceri Aff. ¶ 3. The investigator "also handed a cease and desist letter to an agent of the Defendant." Plaintiff's MOL at 4. Plaintiff does not allege, nor does the record before the Court reflect, that defendants advertised the Event, charged patrons an admission fee to enter the establishment, or that defendants engaged in similar conduct on previous occasions.

Plaintiff asserts that the Rahman/Lewis match on November 17, 2001 was not and could not be mistakenly or innocently intercepted by defendants. Compl. ¶¶ 14-15, Forster Aff. ¶ 3; Plaintiff's MOL at 6-7. Although defendants' method of illegally intercepting the signal for the Rahman/Lewis match is unknown, plaintiff surmise that defendants could have used any or a combination of the following known methods: (1) the use of an unauthorized cable decoder, (2) obtaining cable service and illegally altering the cable service to bring the signal of the Event into the establishment or (3) moving an unauthorized decoder from its authorized location to the establishment. Comp. ¶ 30; Plaintiff's MOL at 6-7.

---

[2] The investigator's affidavit stated that he observed approximately fourteen "persons" in the establishment but does not clarify how many of those fourteen were "patrons" as opposed to employees. See Manceri Aff.

**DISCUSSION**

The holding of an inquest by affidavit, without an in-person court hearing, is permitted "as long as [the court has] ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). Moreover, where "the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998); see also Au Bon Pain v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability, see Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995), and the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

In its motion for default judgment, plaintiff seeks: (1) the maximum statutory penalty of $10,000 for a willful violation of 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) an enhanced statutory penalty of up to $100,000 for a willful violation of 47 U.S.C. § 605(e)(3)(C)(ii); (3) the maximum statutory penalty of $10,000 for a willful violation of 47 U.S.C. § 553(c)(3)(A)(ii); (4) an enhanced statutory penalty of $50,000 for a willful violation of 47 U.S.C. § 553(c)(3)(B); and (5) attorneys' fees in the amount of $1,895 and costs in the amount of $613. Plaintiff also seeks interest "at the maximum allowed rate . . . from March 25, 2003 [, the filing date]." Forster Aff. ¶ 7(F). These requests will be considered in turn.

## A. Statutory Violations and Damages

Section 605 provides in relevant part:

No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

Section 553 provides in relevant part:

No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a).

Plaintiff's complaint appears to establish the elements of liability required to state claims under both § 605(a) and § 553(a). Section 605(a) has been deemed applicable to thefts of cable communications, as long as the cable programming originated as a radio communication. Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 131 & n.5 (2d Cir. 1996). Since plaintiff alleges that the Event was conveyed via interstate satellite transmission (see Compl. ¶¶ 11-14, 22; Plaintiff's MOL at 3), defendants' interception of plaintiff's signal constitutes a violation of § 605(a). See KingVision Pay-Per-View Corp., Ltd. v. Tardes Calenas Moscoro, Inc., No. 01 Civ. 9775, 2004 WL 473306, at *2 (S.D.N.Y. Mar. 12, 2004) (holding that defaulting defendant was liable under § 605, where plaintiff's factual allegations referred to "satellite transmissions, which indicate that the broadcast originated with a radio transmission.").

In cases involving broadcasts which are transmitted over the air but are also distributed over a cable system, § 605(a) will apply "to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system," while § 553(a) applies to "theft of a service from the point at which it is actually being distributed over a cable system." Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1008 (2d Cir. 1993). Thus, while the Event was conveyed via interstate satellite transmission, plaintiff has alleged that defendant could not have obtained transmission of the event without performing one of the following illegal acts: using an unauthorized decoder, obtaining cable or satellite service and illegally altering the cable or satellite service to transfer the signal into the establishment, or moving an unauthorized decoder from its authorized location to the establishment. Comp. ¶ 30; Plaintiff's MOL at 6-7. Therefore, to the extent that the defendant stole services at the point that they were distributed via cable, defendant's acts also constitute a violation of § 553(a). See Entm't by J&J Inc. v. Mama Zee Restaurant & Catering Servs., Inc., No.01 Civ. 3945, 2002 WL 202522, at *2 (E.D.N.Y. May 21, 2002).

However, it is well-settled in the Second Circuit that plaintiff cannot recover under both § 605(a) and § 553(a). "[W]here a defendant is found to have violated both statutes, the court should award damages pursuant to 47 U.S.C. § 605." Time Warner Cable v. Taco Rapido Restaurant, 988 F. Supp. 107, 110 (E.D.N.Y. 1997) (citing Int'l Cablevision, Inc. v. Sykes, 997 F.2d at 1007). Accordingly, plaintiff's request for damages will be considered only under § 605.

Plaintiff has elected to receive statutory damages, as opposed to actual damages. Section 605(e)(3)(C)(i)(II) allows a party to recover an award of statutory damages "for each

violation of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." In addition, § 605(e)(3)(C)(ii) provides that "where the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a)."

Although § 605 provides little guidance for assessing damages (see Time Warner Cable v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999); Cablevision Sys. New York City Corp. v. Diaz, No. 01 CIV. 4340, 2002 WL 31045855, at *3 (S.D.N.Y. July 10, 2002)), courts in this circuit have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events. See Googies Luncheonette, Inc., 77 F. Supp. 2d at 489. The first method bases the award on the number of patrons in the establishment who viewed the broadcast. See, e.g., Kingvision Pay-Per-View Ltd. v. Cardona, No. 03 Civ. 3839, 2004 WL 1490024, at *3 (S.D.N.Y. June 30, 2004) ($20 per patron); Taco Rapido Restaurant, 988 F. Supp. at 111 ($50 per patron); Cablevision Sys. Corp. v. 45 Midland Enterprises, Inc., 858 F. Supp. 42, 43 (S.D.N.Y. 1994) ($50 per patron). The second method awards a flat sum for each violation. See, e.g., Entm't by J&J, Inc. v. Suriel, 01 Civ. 11460, 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding $11,000); Kingvision Pay-Per-View Corp., Ltd. v. Papacito Lidia Luncheonette, Inc., 01 Civ. 7575, 2001 WL 1558269, at *2 (S.D.N.Y. Dec. 6, 2001) (awarding $20,000); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 442-43 (S.D.N.Y. 2001) (awarding $15,000). In cases where there is uncontradicted evidence of the number of patrons viewing the match in the

establishment, courts have used the first approach and multiplied the number of patrons by a set sum, plus any cover charges or other profits attributable to the unauthorized viewing. See Googies Luncheonette, Inc., 77 F. Supp. 2d at 489; see also Cardona, 2004 WL 1490224, at *3; Time Warner Cable v. Sanchez, No. 02 Civ. 5855, 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003). This is based on the theory that the patrons who watched the unauthorized broadcast would have ordered it individually for residential use. Googies Luncheonette, Inc., 77 F. Supp. 2d at 490.

Here, plaintiff has not provided specific evidence of the fees charged to commercial establishments for authorization to exhibit the Rahman/Lewis match. Nor has plaintiff provided evidence of the admission fee that it purportedly required establishments to charge its patrons for attending the exhibition of the Event. See Plaintiff's MOL at 3.

Instead, in its Memorandum of Law, plaintiff asserts that the license fee it typically charges to authorized commercial establishments for broadcasting similar events is based upon "specific factors, including the capacity of the bar." Plaintiff's MOL at 9. Plaintiff further asserts that based on its investigator's affidavit indicating that Esmerelda de Colombia had a capacity of at least 14 patrons, it would have charged defendants "approximately $2,500" in order to authorize defendants to broadcast the Event. Id. at 10. However, it is well-settled that statements contained in a memorandum of law are not evidence. See Giannullo v. City of New York, 322 F.3d 139, 142 (2d Cir. 2003); Suarez v. Chase Manhattan Bank, No. 93 Civ. 8937, 1996 WL 490703, at *5 (S.D.N.Y. Aug. 28, 1996). Such a statement, without supporting evidence regarding the licensing fee it would have charged the establishment, will not be considered. Because plaintiff has presented no evidence regarding the fee it would have charged

the defendant establishment to display the Event, it has failed to demonstrate that it suffered any actual damages because of defendants' conduct.

There is also no evidence that defendant advertised or otherwise promoted the Event or imposed any admission or cover charges on the day of the unauthorized broadcast. As previously noted, courts in comparable cases have simply assessed damages at $20 to $50 per patron. See, e.g., Cardona, 2004 WL 1490224, at *3 ($20 per patron); Taco Rapido Restaurant, 988 F. Supp. at 111 ($50 per patron). Because multiplying $50 by the number of patrons (fourteen, at a maximum)[3] falls short of the statutory minimum, it is respectfully recommended that the District Court award initial damages at the statutory minimum of $1,000. See Kingvision Pay-Pay-View v. Rodriguez, No. 02 Civ. 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003) (court awarded $1,000 for initial amount of damages, because plaintiff's license fee was not provided in evidence).

However, as some courts have observed, awarding the statutory minimum prescribed by § 605 "'would not be sufficient deterrence' since the penalty would merely be 'the amount that should have been paid.'" Cablevision Sys. New York City Corp., 2002 WL 31045855, at *4 (quoting Time Warner Cable v. Domsky, No. 96 Civ. 6851, 1997 WL 33374593, at *6 (S.D.N.Y. Sept. 5, 1997)); see also, Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003). In light of the statutory objective of deterring future violations of § 605, it its respectfully recommended that the amount of statutory damages should be increased to $2,000. See Recio, 2003 WL 21383826, at *5 (court doubled the initial statutory damages amount of $1,000 to $2,000 for deterrence purposes) (citing

---

[3]See footnote 2, *supra*.

Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistic y Caridad, Inc., 2001 WL 1586667 at *2 (S.D.N.Y. Dec. 12, 2001)); see also H.R. Rep. No. 98-934, at 84 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720.

Plaintiff further seeks an enhancement of damages for willfulness in the sum of $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). The record reflects that defendants affirmatively and willfully engaged in some deliberate act to intercept the Rahman/Lewis match. However to receive enhanced damages, plaintiff must also prove that defendants' display was for "purposes of direct or indirect commercial advantage or private financial gain." See 47 U.S.C. § 605(e)(3)(C)(ii). Courts typically consider the following factors in determining whether a defendant's willful conduct calls for enhanced damages: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." Recio, 2003 WL 21383826, at *5 (internal citations omitted).

There is no evidence in the record, nor does plaintiff allege, that defendants pirated other events besides the Rahman/Lewis match, advertised or displayed the Event to entice patrons to the establishment, charged a cover charge or premium on food and drinks, or that patrons went to the establishment because of its display of the Event. Instead, plaintiff merely asserts that defendants broadcasted the Event to secure private financial gain and direct commercial advantage, without providing evidence in support of this assertion. Plaintiff's MOL at 17. As discussed above, assertions contained in a memorandum of law are not evidence. See Giannullo, 322 F.3d at 142. Accordingly, taking into account the above-mentioned factors, and

in light of the record before the Court, it is respectfully recommended that plaintiff not be awarded an enhancement of damages for willfulness. See Cablevision Sys. New York City Corp., 2001 WL 138815, at *4 (holding that, although defendant had willfully used an illegal decoder, plaintiff was not entitled to an additional statutory award under § 605(e)(3)(C)(ii) because it had failed to demonstrate that defendant "was using the device for commercial advantage or private financial gain."). Instead, it is respectfully recommended that damages be awarded in the amount of $2,000 as set forth above.

### B. Attorneys' Fees and Costs

Plaintiff's motion further requests attorneys' fees pursuant to 47 U.S.C. § 605(e) and 47 U.S.C. § 553(c), in the amount of $1,895. The Court will consider plaintiff's fee application in the context of § 605(e) because the foregoing analysis has been in the context of this statute. Indeed, an award of attorneys' fees is mandatory under § 605(e). See 47 U.S.C. § 605(e)(3)(B)(iii) ("The court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."). In the Second Circuit, a party seeking an attorneys' fees award "must support that request with contemporaneous time records that show, 'for each attorney, the date, the hours expended, and the nature of the work done.'" Diaz, 2002 WL 31045855, at *5 (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)).

In support of its request, plaintiff's counsel have provided contemporaneous time records of work performed litigating the instant action, as the Second Circuit requires. Plaintiff's counsels' time record reflects that they expended 6.7 hours of attorney time at a rate of $250 per hour, equaling $1,675, as well as 2.2 hours of paralegal time at a rate of $100 per hour, equaling

-11-

$220, for a total of $1,895.  See Docket no. 10, Affidavit of Jeanne Ellen Forster in Support of Request for Attorney's Fees ("Fees & Costs Aff.") and Time Record, attached as "Ex. A" thereto. Because these rates are reasonable (see Martas v. Zaro's Bake Shop, Inc., No. 98 Civ. 5895, 2002 WL 1267999, at *6 (E.D.N.Y. Mar. 29, 2002); Wells Fargo Bank v. BrooksAmerica Mortg. Corp., No. 02 Civ. 4467, at *3 (Dec. 1, 2004)), and because the number of hours expended by counsel do not appear excessive, redundant, or otherwise unnecessary (see Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)), it is respectfully recommended that the District Court grant plaintiff's request for attorneys' fees in the total amount of $1,895.

In addition, the Court has examined plaintiff's request for costs in the amount $613 and finds that the amount requested is reasonable.  See Fees & Costs Aff.  Accordingly, it is respectfully recommended that the District Court award attorneys' fees and costs in the total amount of $2,508.

### C.  Interest

Plaintiff also requests interest "at the maximum allowed" by the Court from March 25, 2003, the date on which this action was commenced, to presumably, the entry of judgment in this action and until any award has been paid by defendants.  Forster Aff. ¶ 7(F). Although plaintiff does not specify the "maximum" legal rate or provide supporting documentation of how such a rate should be calculated and applied, the Court will nevertheless address plaintiff's request for an award of interest.

When a federal statute is silent with respect to a prejudgment interest rate, the "'common practice' among courts within the Second Circuit is to grant interest at a rate of 9%, the rate of prejudgment interest under New York State law." Service Employees Int'l. Union,

Local 32BJ, AFL-CIO v. Stone Park Associates, LLC, 326 F. Supp. 2d 550 (S.D.N.Y. 2004) (citing N.Y. C.P.L.R. §§ 5001-5004 (McKinney 1992)). Accordingly, because 47 U.S.C. §§ 605 and 553 are silent with respect to a prejudgment interest rate, it is respectfully recommended that the District Court award prejudgment interest at a rate of nine per cent from March 25, 2003 to the date of entry of judgment in this action. See Recio, 2003 WL 21383826, at *6 (awarding nine per cent interest rate); Kingvision Pay-Per-View, Ltd. v. Ruiz, No. 04 Civ. 6566, 2005 WL 589403 (S.D.N.Y. Mar. 9, 2005) (same); see also N.Y. C.P.L.R § 5004 (McKinney 1992).

Furthermore, post-judgment interest is available in civil judgments entered in federal court from the date of the judgment until paid. See 28 U.S.C. § 1961. Accordingly, it is respectfully recommended that post-judgment interest be awarded at the rate provided by law.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that the District Court award plaintiff statutory damages of $2,000, as well as attorneys' fees and costs of $2,508, for a total award of $4,508, against both defendants, jointly and severally. Furthermore, it is respectfully recommended that this amount accrue interest at the rate of nine per cent from March 25, 2003 to the entry of judgment, and that the judgment itself accrue interest at the rate provided by law until paid.

Any objections to this Report and Recommendation must be filed with United States District Judge David G. Trager within ten days of the date of entry of this Report and Recommendation. Failure to object within ten days of the date of entry will preclude appellate review by the District Court. Local Civil Rule 6.3; Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); see also Fed. R. Civ. P. 72(a) ("Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made."). Any requests for extensions of time to file objections should be made to Judge Trager.

**SO ORDERED.**
Dated: March 31, 2005
       Brooklyn, New York

                                         /s/
                               **Kiyo A. Matsumoto**
                               United States Magistrate Judge
                               Eastern District of New York